IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAURIE GRANT<br><br>      **Plaintiff,**<br><br>  v.<br><br>MONTGOMERY COUNTY<br>COMMUNITY COLLEGE<br><br>      **Defendant.** | CIVIL ACTION NO. 20-5694 |

**MEMORANDUM OPINION**

*Pro se* Plaintiff Laurie Grant brought this employment discrimination suit against Defendant Montgomery County Community College, alleging violations of the Americans with Disabilities Act ("ADA") and the Pennsylvania Human Relations Act ("PHRA"). Defendant moved for summary judgment on Plaintiff's claims, to which Plaintiff made no response. For the reasons stated below, the Motion will be granted.

I.    BACKGROUND

   A.   Factual Background[1]

On October 22, 2018, Plaintiff began working for Defendant as a part-time temporary resources assistant. In March 2019, Plaintiff provided Defendant with a letter from her doctor stating that, due to Plaintiff's "chronic neck and back symptoms," Plaintiff (1) "should limit the amount of time that she needs to spend purely performing data entry and computer work;" (2) "should not perform repetitive neck flexion and extension work;" (3) "should not stay sedentary

---

[1] Because Plaintiff failed to respond to Defendant's motion, these facts are drawn from Defendant's "Statement of Undisputed Material Facts," which, although Plaintiff has neither agreed to nor disputed, is supported by evidence, including the transcript of Plaintiff's deposition, the declarations, and the documentation from Plaintiff's employment file. *See* Mem. Supp. Def.'s Mot. Summ. J. [Doc. No. 43-2] at 2-7; App. Supp. Def.'s Mot. Summ. J. [Doc. No. 43-3].

1

for more than 20 minutes at a time;" and (4) "should be able to take 60 second breaks every 20 minutes for position changes and light stretching."[2]

In response to the letter, Conchita Glasgow, the Assistant Director of Student Services, sent Plaintiff an email advising her that "[t]he essential functions of [her] job involve data entry and assisting students at the Welcome Desk," which comprises "both sedentary [and] non-sedentary work."[3] Glasgow stated that while Defendant was "able to accommodate [Plaintiff's] requests for reasonable accommodation," it would be "incumbent upon [Plaintiff]" to decide when she needed to take her 60-second break and how to vary her duties such that she would not be walking for more than 20 minutes at a time.[4] Plaintiff continued to receive this accommodation in her subsequent role as a part-time student services assistant, which similarly required that Plaintiff work at the Welcome Desk and perform both sedentary and non-sedentary work.

In October 2019, Plaintiff applied for a new position as a part-time enrollment services assistant. Kimberly Van Strien and Barbara LeFevre[5] interviewed a total of six candidates for the job. Van Strien and LeFevre rated each candidate based on an identical set of factors, which resulted in a "summary score."[6] Plaintiff received the second lowest score (3.07), and Kathleen Welsh, who ultimately received the position, received the highest score (3.50). Although Van

---

[2] App. Supp. Def.'s Mot. Summ. J. Ex. 16 [Doc. No. 43-3] at ECF page 70.

[3] App. Supp. Def.'s Mot. Summ. J. O'Connor Decl. [Doc. No. 43-3] at ECF page 117.

[4] App. Supp. Def.'s Mot. Summ. J. O'Connor Decl. [Doc. No. 43-3] at ECF page 117.

[5] At the time of Plaintiff's interview, Van Strien was Defendant's Coordinator of Enrollment Operations, and LeFevre was a supervisor. App. Supp. Def.'s Mot. Summ. J. Van Strien Decl. [Doc. No. 43-3] at ECF page 129 ¶¶ 3, 5.

[6] App. Supp. Def.'s Mot. Summ. J. Van Strien Decl. [Doc. No. 43-3] at ECF page 129 ¶ 9. The factors were listed as follows: ability to work within a team-oriented setting; communication and listening skills; initiative; interest and knowledge in the College and position; potential to grow in the position; related education and training; and related job experience. App. Supp. Def.'s Mot. Summ. J. Ex. 49 [Doc. No. 43-3] at ECF page 131.

Strien and LeFevre were not aware that Plaintiff had a disability or that she had received an accommodation from Defendant, Plaintiff testified in deposition that she "assume[d]" that she was not hired "because of the disability."[7]

On October 29, 2019, Glasgow advised Plaintiff that she would be assigned to cover the Welcome Desk more regularly because of the departure of another employee. Plaintiff then informed Glasgow that her "health condition is permanent" and that the Welcome Desk schedule to which she had been assigned was "not possible."[8] In response, Defendant's Director of Equity, Diversity, and Inclusion and Title IX Coordinator instructed Plaintiff that Defendant would "need a new doctor's note . . . so that [Defendant] may properly evaluate any reasonable accommodations, with which [Plaintiff would] be able to perform an essential function of [her] job, working the Welcome Desk."[9] Accordingly, Plaintiff provided a new doctor's note, dated November 7, 2019, which affirmed that Plaintiff should not work at the Welcome Desk and that these restrictions would "be necessary indefinitely."[10]

Four days later, Defendant terminated Plaintiff's employment. The termination letter provided, in part:

> Your supervisor states that the work you would be doing at the Welcome Desk is identical to the work you would perform elsewhere at the College, with or without reasonable accommodations. The accommodations you have been afforded, with the benefit of medical advice, require your personal judgment in assessing your physical needs for standing, sitting, stretching, and walking, as needed. A careful evaluation of all your essential job duties leads us to conclude that there are no additional physical requirements in working at the Welcome Desk that could adversely affect your present physical condition, that are not also within your control.

---

[7] App. Supp. Def.'s Mot. Summ. J. Grant Dep. [Doc. No. 43-3] at ECF page 45 ¶¶ 20-21.

[8] App. Supp. Def.'s Mot. Summ. J. Ex. 25 [Doc. No. 43-3] at ECF page 90.

[9] App. Supp. Def.'s Mot. Summ. J. Ex. 27 [Doc. No. 43-3] at ECF page 96.

[10] App. Supp. Def.'s Mot. Summ. J. Ex. 28 [Doc. No. 43-3] at ECF page 100.

> According to your job description, working at the Welcome Desk is an essential function of the job of Part Time Student Services Resource Center Assistant. We have neither the staffing nor the scheduling flexibility to exempt you from performing this essential function as needed, and with reasonable accommodations.
>
> Since you are unable to perform one of the essential functions of your job, with or without reasonable accommodations, I regret to inform you that the College has no suitable employment for you at this time, commensurate with the stated and required essential functions of the job of Part Time Student Services Resource Center Assistant.[11]

### B. Procedural History

On November 29, 2019, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), asserting claims of disability discrimination in violation of the ADA and PHRA.[12] On September 4, 2020, the EEOC issued a Dismissal and Notice of Rights Letter to Plaintiff.[13] Plaintiff filed a second charge in May 2020, alleging that she applied for a job position with Defendant, that she was interviewed for the position, and that she "was denied this new position based on the same discrimination since the interviewers worked alongside [her] previous supervisor."[14] On August 21, 2020, the EEOC issued a Dismissal and Notice of Rights for the second discrimination charge.[15]

On November 12, 2020, Plaintiff filed this action against Defendant, alleging disability discrimination and retaliation under the ADA and PHRA. Plaintiff challenges Defendant's termination of Plaintiff and avers that Defendant failed to reasonably accommodate Plaintiff's disability and failed to engage in the interactive process.

---

[11] App. Supp. Def.'s Mot. Summ. J. Ex. 29 [Doc. No. 43-3] at ECF page 102.

[12] Compl. [Doc. No. 2] at ECF pages 9-10.

[13] Compl. [Doc. No. 2] at ECF page 8.

[14] Compl. [Doc. No. 2] at ECF page 7.

[15] Compl. [Doc. No. 2] at ECF page 6.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is warranted if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[16] "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[17] A "genuine" dispute over material facts exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[18] To evaluate a motion for summary judgment, the court must "view the facts in the light most favorable to the non-moving party" and draw "all reasonable inferences in that party's favor."[19] Nonetheless, the non-moving party must support its opposition to the motion by pointing to evidence in the record.[20]

## III. DISCUSSION

Although Plaintiff bears the burden of proof on her claims, Plaintiff has presented no evidence to satisfy the elements of those claims. Plaintiff's allegations in her Complaint are entitled no weight on summary judgment because "summary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."[21] Defendant therefore has produced uncontroverted evidence that entitles it to judgment as a matter of law.

---

[16] Fed. R. Civ. P. 56(a).

[17] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[18] *Id.*

[19] *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citation omitted).

[20] *Celotex Corp v. Catrett*, 477 U.S. 317, 322–23 (1986).

[21] *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir 2006) (citing *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109–10 (3d Cir. 1985)); *see also Hawkins v. Fed. Nat. Mortg. Ass'n*, No. 2:13-6068, 2015 WL 356932, at *2 (E.D. Pa. Jan. 28, 2015).

To state a prima facie case of disability discrimination under the ADA,[22] a plaintiff must demonstrate: (1) that she is a disabled person within the meaning of the ADA; (2) that she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that she has suffered an otherwise adverse employment decision as a result of discrimination."[23] To establish an ADA retaliation claim, a plaintiff must show "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action."[24]

Defendant does not dispute that Plaintiff was disabled within the meaning of the ADA. Instead, it argues that Plaintiff was not otherwise qualified to perform the essential functions of her job, that Defendant made reasonable, good-faith efforts to assist Plaintiff in identifying a reasonable accommodation, and that there was no equivalent position into which Plaintiff could have been transferred. Even if Plaintiff lacks evidence to refute Defendant's position, Plaintiff's claims depend on Defendant's basis for terminating Plaintiff.

"The familiar *McDonnell Douglas* framework" requires a plaintiff to first establish a prima facie case.[25] "If the plaintiff successfully demonstrates a prima facie case of discrimination

---

[22] The ADA and the PHRA "are . . . to be interpreted consistently, and . . . have the same standard for determination of liability." *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274 (3d Cir. 2012) (citations omitted).

[23] *Reyer v. Saint Francis Country House*, 243 F. Supp. 3d 573, 591 (E.D. Pa. 2017) (citing *Gaul v. Lucent Techs.*, 134 F.3d 576, 580 (3d Cir. 1998)).

[24] *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567–68 (3d Cir. 2002) (citing *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997)); *Ross v. Gilhuly*, 755 F.3d 185, 193 (3d Cir. 2014) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012)) ("To succeed on an FMLA retaliation claim, a plaintiff must show that "(1) [s]he invoked his right to FMLA-qualifying leave, (2) [s]he suffered an adverse employment decision, and (3) the adverse action was causally related to [her] invocation of rights.").

[25] *Milby v. Greater Philadelphia Health Action*, 339 F. App'x 190, 191 (3d Cir. 2009); *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 187 (3d Cir. 2003); *Jakomas v. City of Pittsburgh*, 342 F. Supp. 3d 632, 653 (W.D. Pa. 2018) ("As with discrimination claims, retaliation claims under the ADA are analyzed under the *McDonnell Douglas* framework.") (citing *Moore v. City of Phila.*, 461 F.3d 331, 342 (3d Cir. 2006)).

[or retaliation], the burden of production (but not the burden of persuasion) shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decision."[26] A defendant "answers its relatively light burden" of production by "introducing evidence which, taken as true, would permit the conclusion that there was a [legitimate] reason for the unfavorable employment decision."[27]

"Once the defendant has satisfied its burden of production at the second stage of the *McDonnell Douglas* tripartite framework, a court's analysis turns to the third and final aspect of the inquiry."[28] "At this point, the court focuses on whether there is sufficient evidence from which a jury could conclude that the purported reasons for defendant's adverse employment actions were in actuality a pretext."[29] "[A] plaintiff may defeat a motion for summary judgment . . . by pointing 'to some evidence, direct or circumstantial, from which a factfinder would reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'"[30] "[T]he plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)."[31]

---

[26] *Mascioli v. Arby's Rest. Grp., Inc.*, 610 F. Supp. 2d 419, 433 (W.D. Pa. 2009) (citing *Simpson v. Kay Jewelers Div. of Sterling, Inc.*, 142 F.3d 639, 644 n.5 (3d Cir. 1998)).

[27] *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994) (citation omitted).

[28] *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 412 (3d Cir. 1999).

[29] *Id.*

[30] *Id.* at 413 (quoting *Fuentes*, 32 F.3d at 764; *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1067 (3d Cir. 1996)).

[31] *Fuentes*, 32 F.3d at 764 (citations omitted); *see Newell v. Heritage Senior Living*, LLC, 673 F. App'x 227, 231 (3d Cir. 2016).

Even "assum[ing] for the sake of argument that [Plaintiff] has established a prima facie case,"[32] Defendant has put forth sufficient evidence to "satisfy its burden of production."[33] Defendant's uncontradicted record evidence establishes that an essential function of Plaintiff's job was to work at the Welcome Desk, that Plaintiff was unable to do so, and that no reasonable accommodation existed that would have allowed her to do so.[34] "Therefore, the burden returns to [Plaintiff]" who has not come forth with any evidence to show that Defendant's reason was pretextual.[35]

Further, to the extent that Plaintiff's ADA discrimination claim is based on Defendant's failure to hire Plaintiff for the part-time enrollment services assistant position, Defendant has produced evidence that neither Van Strien nor LeFevre were aware that Plaintiff had a disability during the hiring process, that Plaintiff's disability was not discussed during her interview, and that Plaintiff "was not selected for the position because she was not the most qualified candidate."[36] Because Plaintiff has failed to support any of her pleading allegations with evidence, summary judgment will be granted.

---

[32] *Newell*, 673 F. App'x at 231.

[33] *Id.*

[34] *See Mengine v. Runyon*, 114 F.3d 415, 420 (3d Cir. 1997) ("[W]here a plaintiff cannot demonstrate 'reasonable accommodation,' the employer's lack of investigation into reasonable accommodation is unimportant . . . . The ADA, as far as we are aware, is not intended to punish employers for behaving callously if, in fact, no accommodation for the employee's disability could reasonably have been made."); *Cartagena v. Temple Univ. Hosp., Inc.*, 389 F. Supp. 3d 341, 351 (E.D. Pa. 2019) ("[Plaintiff] has failed to show that Defendant's purported reason for terminating Plaintiff—that she could not perform the essential functions of her position, with or without a reasonable accommodation—was merely pretext for discrimination.").

[35] *Newell*, 673 F. App'x at 231.

[36] [Doc. No. 43-2] at 10; *see* App. Supp. Def.'s Mot. Summ. J. Van Strien Decl. [Doc. No. 43-3] at ECF page 129 ¶¶ 10-16.

## IV. CONCLUSION

For the reasons stated above, Plaintiff has not established the existence of a genuine issue of material fact for trial. Accordingly, the Motion will be granted. An appropriate order follows.